# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| CURT A. MARCANTEL, an individual,<br><br>Plaintiff,<br><br>v.<br><br>STEWART TITLE GUARANTY COMPANY, a Texas corporation, COALITION TITLE AGENCY, INC., a Utah corporation, MICHAEL AND SONJA SALTMAN FAMILY TRUST, an entity MICHAEL A. SALTMAN, an individual, and SONJA SALTMAN, an individual,<br><br>Defendants. | **MEMORANDUM DECISION GRANTING COALITION TITLE COMPANY'S MOTION FOR SUMMARY JUDGMENT**<br><br>Case No. 2:16-cv-00250-DBP<br><br>Magistrate Judge Dustin B. Pead |

## INTRODUCTION

The parties consented to this court's jurisdiction under 28 U.S.C. § 636(c). (ECF No. 20). The case is before the court on Defendant Coalition Title Company's ("Coalition") Motion for Summary Judgment. (ECF No. 66). The Motion is fully briefed, including Plaintiff Curt A. Marcantel's ("Marcantel") response to Coalition's evidentiary objection, and Coalition's response to Marcantel's evidentiary objection. *See* (ECF Nos. 67–70, 72). The court did not hear oral argument.

## STANDARD OF REVIEW

A "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A party asserting that a fact . . . is genuinely disputed must support the assertion by . . .

citing to particular parts of materials in the record." *Id.* 56(c)(1)(A). "A dispute is genuine when a reasonable jury could find in favor of the nonmoving party on the issue." *Macon v. United Parcel Serv., Inc.*, 743 F.3d 708, 712 (10th Cir. 2014). In conducting its review, the court must view the evidence and draw reasonable inferences from that evidence in the light most favorable to the non-moving party. *Id.*

## **FACTS**

In February 2015 Coalition assisted Defendant Stewart Title Guaranty Company ("Stewart Title") to issue a commitment for title insurance related to a parcel of real property Marcantel purchased. (ECF No. 67 at 2, 4–5). Coalition acted in two roles during the transaction: first, as an escrow agent for the real estate purchase and second, as an agent of Stewart Title who issued the title-insurance commitment, updated commitment, and policy. (*Id.* at 7). The title-insurance commitment and updated commitment contain disclaimers indicating those documents are not abstracts of title. (*Id.* at 9, 10). Marcantel did not ask Coalition to prepare an abstract of title. (*Id.* at 8). Coalition did not prepare, or agree to prepare, an abstract of title. (*Id.* at 8, 11).

The escrow-closing instructions contain the only evidence of a written agreement between Marcantel and Coalition. (*Id.* at 8). Coalition did not assume the role of title abstractor under the terms these instructions. (*Id.*) Marctantel does not suggest Coalition failed to comply with any escrow instruction.

Marcantel contends he and Coalition had conversations that gave rise to additional duties beyond escrow agent and agent of Stewart Title.[1] The parties agree that Coalition initially

---

[1] Coalition objected to Marcantel's declaration and Ms. Tisha Digman's declaration on hearsay grounds. The court overrules the objections because Coalition must show the evidence cannot be presented in admissible form. *See* Fed. R. Civ. P. 56(c)(2). It has failed to do so.

identified an encumbrance resulting from a sanitary sewer easement recorded in January 2001. Coalition excluded that encumbrance from coverage in the initial title-insurance commitment. (ECF No. 67 at 5; ECF No. 35 at 10). Marcantel called Coalition to discuss the exclusion from the title policy related to the January 2001 sewer easement. (ECF No. 67 at 5; ECF No. 35 at 10). He also claims he told Coalition he did not want to purchase the property if it was burdened by a sewer easement.[2] Subsequently, Coalition and Stewart Title discovered the January 2001 sewer easement did not burden the property Marcantel purchased, but instead burdened a different property. (ECF No. 67 at 5–6; ECF No. 35 at 10). Accordingly, the exclusion for the 2001 sewer easement was removed and an updated commitment for title insurance issued. (ECF No. 67 at 9–10); (ECF No. 35 at 10). Marcantel asserts that while he was discussing the sewer easement issue with Coalition, an agent of Coalition told Marcantel "there were no sewer easements burdening the Property." (ECF No. 68, Ex. 1). Coalition disputes this statement (ECF No. 69, Ex. 2), but the court will treat accept it as true for purposes of this motion. While the 2001 sewer easement apparently did not encumber the property Marcantel purchased, another rogue sewer easement did burden the property; but that second easement was not discovered until after Marcantel purchased the property. *See* (ECF No. 69 at 5); (ECF No. 35 at 10–13).

## ANALYSIS

Coalition contends it is entitled to summary judgment because it acted only as a title insurer and Utah law excuses title insurers from tort liability even if their title research contains errors. (ECF No. 66 at 11–14). Coalition contends it cannot be held liable for errors stemming from its

---

[2] Coalition attempts to dispute the details of discussions with Marcantel with a declaration. (ECF No. 69, Ex. 2). This is somewhat odd because a disputed material fact could defeat Coalition's motion. Thus, the court accepts Marcantel's declaration as true for purposes of this motion.

title research because its research was undertaken in the course of assisting Stewart Title to issue title insurance and Utah law precludes tort claims against title insurers for their title research and statements made regarding title. (*Id.* at 11). Coalition further argues that it did not agree to accept the role of title abstractor while preparing and issuing the commitment for title insurance. (*Id.* at 12–13). This distinction is material because title abstractors may be held liable for errors related to defective title research, but title insurers may not be held liable for such errors. (*Id.*)

Marcantel contends the court cannot answer the fact-intensive question of whether Coalition owed a duty at the summary-judgment stage. (ECF No. 67 at 16–22). Next, Marcantel concedes Utah tort law does not impose tort liability on a title insurer for omitting an encumbrance from a title insurance commitment or policy. Nonetheless, he contends Coalition undertook additional duties when it discussed the 2001 sewer easement with Marcantel and told him "there were no sewer easements burdening the Property." (ECF No. 68, Ex. 1); *see* (ECF No. 67 at 23).

### I. **Coalition is entitled to summary judgment because title insurers may not be held liable as abstractors**

In 1990, Utah adopted what was then the "prevailing view . . . not to impose liability in tort on a title company." *Culp Const. Co. v. Buildmart Mall*, 795 P.2d 650, 653 (Utah 1990). Unlike an abstractor who may be liable in tort, "title insurers generally are liable only under the terms of the insurance contract." *Walker v. Anderson-Oliver Title Ins. Agency, Inc.*, 309 P.3d 267, 270 (Utah Ct. App. 2013). In *Walker*, the Utah Court of Appeals concluded two title insurance companies did not act as abstractors when they determined certain deeds were invalid and chose not to list them in a commitment for title insurance. *Id.* at 272. The court relied on its earlier decision in *Chapman v. Uintah County*, in which the court found a title insurance company did not voluntarily assume the role of abstractor when it made a legal conclusion based on public

4

records and incorrectly concluded a road adjacent to the property at issue was private. 81 P.3d 761, 765–67 (Utah. Ct. App. 2003).

Here, the undisputed facts in the record demonstrate Coalition acted as a title insurer and must be excused from tort liability under *Culp* and its progeny. Coalition performed title research to determine the extent to which Stewart Title was willing to insure title for the property Marcantel purchased. (ECF No. 67 at 4–7, 13). Marcantel never asked Coalition to prepare an abstract of title. (*Id.* at 8, 11). Stewart Title issued a commitment for title insurance based on Coalition's research. (*Id.* at 7–8). The title-insurance commitment expressly states it "is a contract to issue one or more title insurance policies and is not an abstract of title or a report of title." (*Id.* at 9). Marcantel then spoke to Coalition about an exclusion from the title policy related to a sewer easement recorded in January 2001. (ECF No. 67 at 5; ECF No. 35 at 10). Coalition and Stewart Title eventually discovered the January 2001 easement burdened some other property, not the parcel Marcantel purchased.[3] (ECF No. 67 at 5–6; ECF No. 35 at 10) Accordingly, Stewart Title issued an updated commitment for title insurance to correct the error. (ECF No. 67 at 9–10). This updated commitment likewise states it "is not an abstract of title or a report of the condition of title." (*Id.* at 10). Coalition also acted as the escrow agent. (*Id.* at 7). The escrow instructions did not require Coalition to evaluate the condition of title, or otherwise undertake duties of an abstractor. (*Id.* at 8; ECF No. 66, Ex. 5). Also, Marcantel does not suggest Coalition breached any term of the escrow instructions. Based on the foregoing, the court finds Marcantel may not bring a tort claim against Coalition.

---

[3] Marcantel contends that certain statements Coalition made during these conversations gave rise to additional duties. This contention is further addressed below. *See infra* Part I.a.2.

### a. Marcantel's counterarguments do not persuade the court to reach a contrary result in this case

Marcantel acknowledges that Coalition assisted Stewart Title by performing title research related to the property. (ECF No. 67 at 2, 4–5). Marcantel also concedes he never asked Coalition to prepare an abstract of title. (*Id.* at 8, 11). Nonetheless, Marcantel asserts he had conversations with Coalition that expose it to tort liability. (*Id.* at 23); (ECF No. 68, Ex. 1). Marcantel contends there is some nebulous liability between title insurer and abstractor that the court should impose on Coaltion for agreeing to talk to Marcantel about a coverage exclusion included in the initial title-insurance commitment and removed when the updated commitment issued. (ECF No. 67 at 23–29). Marcantel takes particular issue with Coalition's purported assurance that there was no sewer easement encumbering the property. (*Id.*) Despite Marcantel's counsel's valiant efforts, the court declines to impose liability on Coalition for several reasons.

#### 1. *Marcantel seeks to impose abstractor liability under another name*

First, while Marcantel cannot admit that he seeks to impose abstractor liability on Coalition, the court finds his arguments betray his true goal. For example, Marcantel suggests that one "who seeks a title-insurance commitment expects to obtain a professional title search, as well as a professional legal opinion as to the condition of the title . . . ." (ECF No. 67 at 19) (quoting *100 Investment Ltd. Partnership v. Columbian Town Center Title Co.*, 60 A.3d 1 (Md. 2013)). This argument lays bare Marcantel's attempt to impose abstractor liability on Coalition. The argument ignores the Utah Supreme Court's distinction between title abstractors and title insurers. The court will not impose abstractor liability on Coalition because Marcantel's argument relies on cases from jurisdictions that rejected the approach taken in *Culp. See, e.g.*, *id.*; *MacDonald v. Old Republic Nat. Title Ins. Co.*, 882 F. Supp.2d 236 (D. Mass 2012).While other jurisdictions

may impose tort liability on title-insurance companies, Utah elected to do otherwise. In Utah, it is an abstractor's duty to provide the status of title and its history. *See Chapman* at 271. A title insurer's duty, on the other hand, is to indemnify property owners for encumbrances. *Id.*; *see Culp*, 795 P.2d at 654 ("One who hires a title insurance company does so for the purpose of obtaining the assurance or guarantee of obtaining a certain position in the chain of title rather than for the purpose of discovering the title status."). While both abstractors and title insurers perform title research, the nature of their liability differs. Marctantel's recourse lies with the insurance policy, not in a tort action against Coalition.

### 2. *Marcantel's conversation with Coalition about exclusions from coverage did not expose Coalition to abstractor liability*

Coalition's discussion with Marcantel regarding the sewer-easement does not expose Coalition to liability. Utah courts have repeatedly rejected attempts to impose tort liability on title insurers without evidence the title insurer accepted a specific additional duty. *See infra* Part I.a3. Also, persuasive authority, on which the Supreme Court relied in *Culp*, rejected a theory that is nearly identical to Marcantel's. When the Utah Supreme court adopted the rule against tort liability for title insurers in *Culp* it relied, in part, upon *Brown's Tie & Lumber Company v. Chicago Title Company of Idaho*, 764 P.2d 423, 426 (Idaho 1988). The plaintiff in *Brown's Tie* argued the title company in that case fell outside the protections afforded to title companies because the title company provided a verbal update of encumbrances. The title company told plaintiff "no subsequent liens or encumbrances had been recorded;" however, a lien in the amount of $880,000 had been recorded against the subject property. *Id.* at 424, 426. Nonetheless, the *Brown's Tie* court held that, unlike a title abstractor, a title insurer is not liable even if it orally provides incorrect title information.

7

Here, Marcantel attempts to succeed on the same theory that failed in *Brown's Tie*. Marcantel argues that Coalition should be held liable because Marcantel asked Coalition about a sewer easement listed as an exclusion from coverage (later properly removed) and incorrectly informed Marcantel "there were no sewer easements burdening the Property." (ECF No. 68, Ex. 1). The court rejects this argument. Finding *Brown's Tie* persuasive, this court concludes Coalition's purported statement is insufficient to expose it to tort liability. Coalition was free to discuss the title policy with Marcantel when he called. Their discussion about the state of title reflected in the title-insurance commitment did not transform Coalition into an abstractor. Nor can Coalition be exposed to liability for incorrectly representing the status of title.

3. *This case is distinguishable from cases in which Utah courts found title insurers undertook additional duties*

While the court is aware that Utah courts have found title insurers may undertake additional duties in certain circumstances, they have done so in circumstances unlike the present case. Utah courts have rejected attempts to transform title insurers into abstractors without evidence the title insurer undertook some specific additional duty. *See, e.g.*, *Walker v. Anderson-Oliver Title Ins. Agency, Inc.*, 309 P.3d 267, 272–73, 275–77 (Utah Ct. App. 2013). *Walker* summarizes a number of circumstances in which a title insurer may undertake additional duties, all of which arise from activities beyond issuing title insurance. *See* 309 P.3d at 276 (discussing duties arising from (1) "contractual obligations to draft documents" (2) "fail[ing] to bid on a piece of property as . . . agreed" and (3) "failing to correctly record a deed"). Even *Culp* recognized a title company may expose itself to liability for statements or omissions regarding title where the company acts as an escrow agent and agrees not to disperse funds unless certain title conditions are met. *See Culp*, 795 P.2d at 655. While Coalition undertook the role of escrow agent here, Marcantel does not

suggest Coalition failed to perform any part of its obligation under the escrow agreement. This distinguishes the present case from *Culp*.

Additionally, the greater context of the parties' discussions militates against finding for Marcantel. Marcantel does not suggest he ever asked Coalition to perform title research for any purpose unrelated to title insurance. The conversation Marcantel purportedly had with Coalition occurred in the course of Coalition's title research on behalf of Stewart Title that was used to prepare a title-insurance commitment. *See* (ECF No. 67 at 2, 4–5). It is evident the conversation related to title insurance because it resulted in Stewart Title issuing an updated commitment for title insurance that removed the challenged exclusion. The conversation did not result in Coalition preparing an abstract of title. It never prepared an abstract. Moreover, Marcantel does not claim he ever asked Coalition to prepare an abstract. Ending a conversation about title insurance with a request to confirm the absence of a sewer easement does not transform a title insurer into an abstractor. Instead, the discussions at issue related primarily to items excluded from coverage in the updated commitment for title coverage. Any mistake regarding the status of title is not actionable as found in *Brown's Tie*.

Thus, the court finds Coalition did not undertake any additional duties that expose it to tort liability. Abstractor liability is unwarranted where Marcantel identifies no agreement made with Coalition to prepare an abstract of title and instead only indicates he called a title insurer to ask about an exclusion from coverage that was later removed (correctly).

       4. <u>*There is no evidence Marcantel paid a separate fee for title research*</u>

Next, the undisputed facts do not show that Marctantel paid $150 for title research. Marcantel paid $150 to Coalition, but this fee represents one half of the settlement or closing fee of $300.

Marcantel paid half; the Saltmans paid the other half. *See* (ECF No. 68, Ex. 3). Moreover, Marcantel's argument on this point appears deliberately vague. Rather than suggest he paid the $150 in exchange for Coalition to prepare an abstract, or conduct research related to a sewer easement, Marcantel merely notes that this fee was "separate from charges for the title insurance." (ECF No. 67 at 28). Marcantel's opposition never explains to the court any purpose for this fee. Instead, Marcantel mentions the fee in the same breath he mentions the discussion with Coalition regarding the sewer easement. While Marctantel apparently hopes the court will make an inference in his favor, the court finds such an inference would be unreasonable, particularly where Marcantel should know, and explain to the court, why he paid the $150 fee.

Further, any discussion of the $150 fee exists only in Marcantel's opposition brief. Any discussion of the $150 fee is conspicuously missing from Marcantel's declaration. *See* (ECF No. 68, Ex. 1). Accordingly, Marcantel's description of this $150 fee constitutes argument, rather than fact that could preclude summary judgment. The only evidence before the court comes from the settlement statement and Mr. Rodman's declaration discussing the fee. *See* (ECF. Nos. 68 at 5 & 69 at 2). The evidence in the record does not indicate the $150 fee is related to special title research as implied by Marcantel's opposition.

### 5. *Utah courts have rejected several of Marcantel's arguments*

Marctantel's opposition memorandum spends a great deal of time discussing the ordinary legal inquiry used to determine whether an individual owes a legal duty to a plaintiff. (ECF No. 67 at 16–22). The court spends little time addressing that discussion because it overlooks the state of Utah law, which exempts title companies from tort liability. Like the *Walker* court, this court finds Marcantel's "negligence claim 'boils down to whether the nature of [Coalition's]

work in this case amounted to abstracting title.'" *Walker*, 309 P.3d at 275. To the extent Marcantel intends to change state law, this court cannot provide him with the relief he seeks.

Next, Marcantel never asserts he relied on any information on Coalition's website, though he cites it in his declaration. *See* (ECF No. 68, Ex. 1 at 3). Additionally, even assuming Marctantel relied on the website, he identifies nothing on the website that modifies the parties' agreement. Accordingly, the court rejects this argument for the same reasons the *Walker* court rejected it. Marcantel "does not allege that the [he] saw any of this information–let alone relied on it–before requesting the Commitment and Title Insurance Policy from the Defendants, nor does he establish that the website statements somehow modified the Commitment . . . the Title Insurance Policy, [or escrow agreement,] the Defendants' only written undertakings." *Walker* at 273.

Finally, Marcantel contends the Utah Insurance Code favors his position because it requires title insurers to perform a "reasonable examination of the title." (ECF No. 67 at 20–21) (quoting Utah Code Ann. § 31A-20-110). In *Culp*, the Utah Supreme Court found this very statutory provision did not preclude the court from adopting a rule excusing title insurers from tort liability. 295 P.2d at 653–54 (finding that while the statute "imposes a duty of a reasonable search and examination for the purpose of determining the insurability of title, it does not impose a duty to abstract titles upon title insurance companies."). In *Chapman*, the Utah Court of Appeals found that this statute did not expose a title company to tort liability or create a duty "to use reasonable care to not mislead one whom [the company] knew would justifiably rely upon the facts as represented." 81 P.3d at 765–66. The Court of Appeals restated this position in *Walker*. *See* 309 P.3d at 271. Based on the authority contradicting Marcantel's position, the court finds the Utah Insurance Code does not subject Coalition to tort liability.

## **CONCLUSION**

In sum, Marcantel's opposition fails to salvage his claims because he concedes there was no agreement for Coalition to provide services of an abstractor. Marcantel argues at length that Coalition undertook some other duty that subjects it to liability. Yet Marcantel's arguments demonstrate he seeks to impose abstractor liability on Coalition. *See, e.g.*, (ECF No. 67 at 19) (arguing that one "who seeks a title insurance commitment expects to obtain a professional title search, as well as a professional legal opinion as to the condition of the title . . . ."))). Marcantel does not suggest Coalition violated any express agreement between the parties. Instead, he asks the court to infer some basis of liability upon Coalition that functions identically to abstractor liability, but is called by some other name. Marcantel does so to avoid the result Utah precedent mandates in this circumstance. The court declines to do so because Marcantel never did the one thing that might warrant finding abstractor liability: he never asked Coalition to prepare an abstract of title. Nor did the escrow agreement include any condition that would have required Coalition to confirm any particular status of title. The court declines Marcantel's invitation to impose abstractor liability while calling it something else. The result would unjustly allow Marcantel the benefit of an abstractor obtained by litigation when he elected not to hire one prior to purchasing the property at issue. To the extent Marcantel intends to recover for the title defect, he must do so under the terms of the title-insurance policy.[4]

---

[4] Marcantel also concedes there is no basis for an award of attorney fees. (ECF No. 67 at 29). Accordingly, the court will also grant Coalition's motion for summary judgment on Marcantel's claim for attorney fees.

## **ORDER**

Based on the foregoing, the court:

**GRANTS** Coalition Title Company's Motion for Summary Judgment. (ECF No. 66).

IT IS SO ORDERED.

DATED this 30th day of March 2018.

BY THE COURT:

_____
DUSTIN B. PEAD
United States Magistrate Judge